

Priority
Enter
Closed
JS-5 / JS-6
JS-2 / JS-3
Scan Only

ENTERED
CLERK, U S DISTRIC COURT

JUL 1 2 2001

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

FILED
CLERK, U S DISTRICT COURT

JUL 1 1 2001

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CARNIGHAN,<br><br>Plaintiff,<br><br>v.<br><br>JAMES HAHN, et al.<br><br>Defendants. | NO. CV 00-11195 GAF (AJWx)<br><br>**ORDER DISMISSING RICO CLAIMS** |

## I.

## INTRODUCTION

Plaintiff Anthony Carnighan alleges that he was falsely arrested, prosecuted and convicted of drug possession based on a quantity of rock cocaine that was planted on him by officers of the Los Angeles Police Department ("LAPD"). His complaint includes claims against the City of Los Angeles, the officers and other defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

Carnighan's complaint fails to adequately allege a claim for relief under RICO because it does not allege an injury to "business or property" within the meaning of the RICO statute. However, because the Court grants Carnighan leave to amend, his RICO claims are **DISMISSED WITHOUT PREJUDICE.**

Docketed
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3

THIS CONSTITUTES
AS REQUIRED

JUL 12 2001

27

## II.

## FACTUAL BACKGROUND

For purposes of ruling on a motion to dismiss, the Court must accept all of plaintiff's factual allegations as true. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986).

On January 20, 1998, LAPD officers David Cochran, Christopher Coppack and others approached Carnighan while he was walking near the intersection of 5th Street and South San Pedro Street in Los Angeles. (Complaint at ¶¶14-15).  Cochran and Coppack exited their patrol car, detained Carnighan without probable cause and accused him of being in possession of rock cocaine. (Id. at ¶15).  They then "retrieved an unknown quantity of cocaine from their own possession and falsely attributed it to [Carnighan]." (Id. at ¶16).

The officers took Carnighan into custody and transported him to the Central Division police station. (Id. at ¶¶17).  At the station, the officers booked the cocaine into evidence and prepared false arrest reports indicating they had found it on Carnighan when they stopped him. (Id. at ¶¶18-19).

The District Attorney subsequently filed a felony complaint against Carnighan charging him with various narcotics offenses. (Complaint at ¶20).  At a preliminary hearing, officers Cochran and Coppack testified in accordance with their false arrest reports. (Id.).  Believing that a jury would not accept his version of these events over the officers' testimony, Carnighan accepted a plea agreement under which he pled guilty to felony possession of a controlled substance and was sentenced to four years in custody. (Id. at ¶¶12, 22-23).  Carnighan remained incarcerated for approximately two years and nine months until the state court issued a writ of habeas corpus overturning his conviction. (Id. at ¶¶12, 24).

//

//

//

# III.

# ANALYSIS

**A.**   **Legal Standard for Evaluating Motions to Dismiss Under Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Generally, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99  (1957).  Dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In evaluating a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994); NL Indus., 792 F.2d at 898.  The court is not, however, required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

RICO claims based on predicate acts involving fraud must be pled with particularity under Rule 9(b). Planned Parenthood of Columbia/Williamette, Inc. v. American Coalition of Life Activists, 945 F. Supp. 1355, 1379 (D. Or. 1996) (collecting cases so holding).  Where the alleged predicate acts do not involve fraud, the more lenient pleading standard in Rule 8(a) applies. Id.; Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).  Even under this more lenient standard, a RICO claim will be dismissed if the plaintiff fails to set forth factual allegations supporting each element of the alleged violation. Miranda, 948 F.2d at 44 ("[T]o avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO

1  statute and (ii) a causal nexus between that activity and the harm alleged.") (emphasis

2  added); Jennings v. Emry, 910 F.2d 1434, 1435 (7th Cir. 1990) (same); cf. Balistreri,

3  901 F.2d at 699 (dismissal is appropriate where insufficient facts are pled to support a

4  cognizable legal theory).

5      Where a motion to dismiss is granted, a district court should grant leave to

6  amend unless it is clear that the complaint cannot be saved by any amendment.

7  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996); Doe v. United States, 58 F.3d 494,

8  497 (9th Cir. 1995).

9  **B.    Elements of a Civil RICO Claim**

10     RICO grants a private right of action to "[a]ny person injured in his business or

11  property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c).

12  Section 1962, in turn, contains four subsections which make it unlawful to: (a) invest

13  income derived from a pattern of racketeering activity in an enterprise; (b) acquire or

14  maintain an interest in an enterprise through a pattern of racketeering activity; (c)

15  conduct the affairs of an enterprise through a pattern of racketeering activity; or (d)

16  conspire to commit any of the above acts. 18 U.S.C. § 1962(a)-(d). Thus, to state a

17  claim for a civil RICO violation, a private plaintiff must allege facts showing (1) an injury

18  to business or property and (2) a substantive violation of one or more subsections of

19  section 1962.

20  **1.    Injury to Business or Property**

21     RICO does not afford a civil remedy for all injuries caused by unlawful

22  racketeering activity; only injuries to "business or property" are actionable. 18 U.S.C. §

23  1964(c). This limitation excludes recovery for personal injuries. Oscar v. University

24  Students Co-op Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 506 U.S.

25  1020, 113 S. Ct. 655 (1992) ("[P]ersonal injuries are not compensable under RICO.")[1];

26

27

28     [1]Although three judges dissented from the judgment in Oscar, they too agreed that personal
injuries are not compensable under RICO. See Oscar, 965 F.2d at 789 (Kleinfeld, J., dissenting).

1   Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990).[2]  In addition, in the Ninth

2   Circuit, "injuries to property are not actionable under RICO unless they result in

3   tangible financial loss to the plaintiff." Oscar, 965 F.2d at 785 (plaintiffs failed to allege

4   any pecuniary injury to their interest in rental property caused by alleged acts of

5   racketeering); Berg, 915 F.2d at 464 (plaintiffs who had incurred no actual expenses

6   as a result of cancellation of insurance policies lacked standing to sue under RICO);

7   Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1311 (9th Cir. 1992), cert.

8   denied, 507 U.S. 1004, 113 S. Ct. 1644 (1993) (affirming dismissal of RICO claim

9   where it was impossible to determine from the complaint whether plaintiffs were

10   alleging lost opportunity to realize profits or loss of specific identifiable profits).

11        The Supreme Court has described RICO's injury requirement as an issue of

12

13   [2]The Ninth Circuit's position is in accord with every other Circuit Court which has confronted

14   this issue, except, perhaps, the Fifth Circuit. Compare Khurana v. Innovative Health Care Sys., Inc., 130 F.3d 143 (5th Cir. 1997) (allowing claims based on injury to reputation), vacated by Teel

15   v. Khurana, 525 U.S. 979, 119 S. Ct. 442 (1998); with Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 954 (8th Cir. 1999) (Plaintiffs who alleged only injury to

16   reputation lacked standing to sue under RICO because damage to reputation is generally considered personal injury, not an injury to "business or property"); Bast v. Cohen, Dunn & Sinclair,

17   PC, 59 F.3d 492, 495 (4th Cir. 1995) ("An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or

18   property.'"); Libertad v. Welch, 53 F.3d 428, 437 (1st Cir. 1995) (Women who sought services at blockaded abortion clinics lacked standing to assert RICO claims against anti-abortion groups that

19   blockaded those clinics because neither woman suffered any injury to business or property); Doe v. Roe, 958 F.2d 763, 767 (7th Cir. 1992) ("The terms 'business or property' are, of course, words

20   of limitation which preclude recovery for personal injuries and the pecuniary losses incurred

21   therefrom."); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) (RICO plaintiffs may not recover damages for physical and emotional injuries due to harmful exposure to toxic

22   waste); Grogan v. Platt, 835 F.2d 844, 846 (11th Cir.), cert. denied, 488 U.S. 981, 109 S. Ct. 531 (1988) (Stating "the ordinary meaning of the phrase 'injured in his business or property' excludes

23   personal injuries, including the pecuniary losses therefrom" and holding that RICO does not permit recovery for economic aspects of personal injuries inflicted by predicate act of murder); Drake v.

24   B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir. 1986) (Rejecting argument that injuries to business

25   or property include all pecuniary injuries caused by a substantive RICO violation and upholding dismissal of RICO claim by plaintiffs exposed to toxic chemicals).

26        The Ninth Circuit's position also finds support in language from two Supreme Court cases. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326 (1979) (Construing similar restriction

27   in Clayton Act and stating "[t]he phrase 'business or property' ... retains restrictive significance. It would, for example, exclude personal injuries...."); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S.

28   479, 105 S. Ct. 3292, 3297 (1985) (Marshall, J., dissenting) (RICO "permits recovery only for injury to business or property. It, therefore, excludes recovery for personal injuries.").

1 standing. <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496, 105 S. Ct. 3275

2 (1985). Whether a plaintiff has alleged an injury to business or property giving rise to

3 standing under RICO is a question of law for the court to determine and may properly

4 be raised on a motion to dismiss. <u>See Oscar</u>, 965 F.2d at 785 (upholding dismissal of

5 complaint for failure to allege an injury to property); <u>Doe v. Roe</u>, 958 F.2d 763, 767-68

6 (7th Cir. 1992).

7       Plaintiff claims he has pled a cognizable injury to his business or property by

8 alleging he lost "employment, employment opportunities, and the wages and other

9 compensation associated with said employment and opportunities ... [because he was]

10 unable to pursue gainful employment while defending ... [himself] against false,

11 unlawful and unjust charges and/or while falsely, unlawfully and unjustly incarcerated."

12 (Complaint at ¶178). Plaintiff also alleges he suffered a material diminishment of his

13 "employment prospects" by virtue of his unlawful incarceration. (<u>Id.</u> at ¶179).[3] Citing to

14 <u>Guerrero v. Gates</u>, 110 F. Supp. 2d 1287 (C.D. Cal. 2000) and the cases cited therein,

15 plaintiff argues that even if he suffered only a personal injury at the hands of the

16 *defendants, pecuniary losses stemming from personal injuries are compensable under*

17 RICO. <u>Guerrero</u> recognized that "[a] number of courts ... have accepted or shown a

18 disposition in favor of allowing RICO claims for the pecuniary losses associated with

19 personal injuries caused by racketeering" and on that basis allowed a similar RICO

20 claim to proceed. <u>Id.</u> at 1292.

21       This line of reasoning, however, was implicitly rejected by the Ninth Circuit in

22 <u>Oscar</u>. The plaintiff in <u>Oscar</u> lacked standing to sue not only because she failed to

23 allege any "out-of-pocket expenditures," but also because "[t]he <u>injury</u> [she] alleged ...

24 is like that claimed by the plaintiff in a personal injury action." <u>Oscar</u>, 965 F.2d at 787

25 (emphasis in original). *According to the court, "economic losses which derive[ ] from a*

26

27 _____

     [3]Plaintiff also alleges he suffered "personal and bodily injuries ... [including] severe
28 emotional and psychological pain, suffering, anxiety, depression, anguish, shock, and fear."
(Complaint at ¶36) Under <u>Oscar</u>, these injuries are outside the ambit of RICO.

1    fundamentally personal injury" are not compensable under RICO.  Id. at 788.

2           Two cases cited with approval by the Ninth Circuit in Oscar confirm this

3    approach.  In Grogan v. Platt, 835 F.2d 844, 846-47 (11th Cir.), cert. denied, 488 U.S.

4    981, 109 S. Ct. 531 (1988), the Eleventh Circuit held that six FBI agents who were

5    injured in a gun battle with suspects and the estates of two other agents who were

6    killed during the shootout, did not have standing under RICO to sue the estates of the

7    men who shot them.  The plaintiffs in Grogan maintained that the quantifiable

8    economic consequences of their personal injuries, including lost wages and

9    employment, constituted injuries to business and property within the meaning of RICO,

10   even if they could not recover under RICO for some of the traditional categories of

11   personal injury damages, such as mental anguish.  The Eleventh Circuit rejected this

12   argument concluding that "the ordinary meaning of the phrase 'injured in his business

13   or property' excludes personal injuries, including pecuniary losses therefrom."  Id. at

14   847 (emphasis added).

15          Grogan is cited with approval by both the majority and dissent in Oscar.  See

16   Oscar, 965 F.2d at 786, 788; id. at 791 (Kleinfeld, J., dissenting) ("In Grogan ... the

17   victim ... was murdered; murder is personal injury, not injury to property, and pecuniary

18   losses flowing from the wrongful death could not transform personal injury into injury to

19   property.").  Similarly, in Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992), the Seventh

20   Circuit rejected the idea that any financial loss, no matter what its source, constitutes a

21   business or property injury within the meaning of RICO.  "Most personal injuries ...

22   entail some pecuniary consequences[,]" but where such losses are incurred as a result

23   of purely personal injuries, they do not constitute injuries to business or property within

24   the meaning of RICO.  Roe, 958 F.2d at 770.

25          Oscar adopts the reasoning and results of Grogan and Roe, both of which

26   directly confronted, and rejected, the argument raised here by plaintiff.  All of the

27   injuries alleged by plaintiff flow directly from his false arrest and imprisonment.  False

28   arrest and false imprisonment constitute injury to the person, not to business or

1   property.  See Owens v. Okure, 488 U.S. 235, 251, 109 S. Ct. 573 (1989) (claims

2   under 42 U.S.C. § 1983, including those based on false arrest, are subject to a state's

3   general or residual statute of limitations for personal injuries); Wilson v. Garcia, 471

4   U.S. 261, 277, 105 S. Ct. 1938 (1985) ("Congress unquestionably would have

5   considered the remedies established in the Civil Rights Act to be more analogous to

6   tort claims for personal injury than, for example, to claims for damages to property or

7   breach of contract."); Cal. Civ. Pro. § 340 (setting forth the statute of limitations for

8   "[a]n action for libel, slander, assault, battery, false imprisonment ... or for injury to or

9   for the death of one caused by the wrongful act or neglect of another...."); Black's Law

10  Dictionary 790 (7th ed. 1999) (defining "personal injury" as, inter alia, "[a]ny invasion of

11  a personal right, including mental suffering and false imprisonment.").  That plaintiff

12  suffered some secondary financial losses flowing from his personal injuries does not

13  transform his losses into injuries to business or property.

14          Admittedly, placing recovery for pecuniary losses associated with personal

15  injuries outside the scope of civil RICO claims creates the possibility that victims of

16  predicate acts of racketeering, such as murder and kidnapping, will be unable to use

17  RICO as a vehicle for redress.  But in such cases, plaintiffs will rarely be without a

18  remedy, which undoubtedly played a part in Congress's decision to exclude personal

19  injury litigation from the RICO statute.  As noted by the Eleventh Circuit,

20                  had Congress intended to create a federal treble damages

21                  remedy for cases involving bodily injury, injury to reputation,

22                  mental or emotional anguish, or the like, all of which cause

23                  some financial loss, it could have enacted a statute

24                  referring to injury generally, without any restrictive

25                  language.

26  Grogan, 835 F.2d at 847 quoting Morrison v. Syntex Laboratories, 101 F.R.D. 743, 744

27  (D.D.C. 1984) (emphasis in Grogan).

28          Finally, even if the Court were to focus solely on the nature of the damages

1   plaintiff sustained, rather than on the nature of the injury inflicted, plaintiff's losses still

2   would not qualify as compensable injuries. "'[P]roperty' comprehends anything of

3   material value owned or possessed." Reiter, 442 U.S. at 338, 99 S. Ct. 2326; cf. Cal.

4   Civ. Code § 654 ("In this Code, the thing of which there may be ownership is called

5   property."). Under California law, the loss of employment generally is not considered

6   an injury to property.[4] Barton v. New United Motor Mfg, Inc., 43 Cal. App. 4th 1200,

7   1207 (1996) (claim for termination in violation of public policy is in the nature of claim

8   for personal injuries, not claim for violations of property right).[5] Nor can plaintiff's

9   claimed "employment opportunity" losses be characterized as the kind of tangible

10  financial loss to a business recoverable under RICO. Grogan, 835 F.2d at 848; Oscar,

11  965 F.2d at 785.

12      **2.   Substantive Violation**

13      In addition to demonstrating standing, to state a claim for damages under

14  section 1964(c), a private plaintiff must adequately allege a substantive violation of one

15  of section 1962's four subsections.

16      This Court already has addressed the pleading requirements for civil RICO

17  claims at some length in a number of Rampart-related cases. See, e.g., June 29,

18  2001 Order in Serrano v. City of Los Angeles, et al., (case no. CV 00-11597)

19  (attached hereto as Exhibit A). The operative complaint in this case suffers from many

20  of the same deficiencies previously identified by the Court in the Serrano order. For

21

22  _____

23      [4]Courts evaluating RICO damage claims have generally looked to state law to determine whether a particular claim constitutes an injury to property. See, e.g., DeMauro v. DeMauro, 115

24  F.3d 94, 96 (1st Cir. 1997); Doe, 958 F.2d at 768; Leach v. F.D.I.C., 860 F.2d 1266, 1274 n.14 (5th Cir. 1988); cf. Oscar, 965 F.2d at 786 (describing the plaintiff's property interest as a "leasehold,"

25  a definition supplied by California law).
        [5]Examples of compensable injuries include the theft or destruction of personal property.

26  See Northeast Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342, 1349 (3d Cir.), cert. denied, 493 U.S. 901, 110 S. Ct. 261 (1989) (destruction of plaintiff's medical equipment constituted injury to

27  property); Gitterman v. Vitoulis, 564 F. Supp. 46, 48-49 (S.D.N.Y. 1982) (allegation that defendants stole jewelry from plaintiff's home sufficient to state claim under RICO). Thus, if plaintiff chooses

28  to file an amended complaint he may meet RICO's standing requirement by alleging the theft or destruction of property connected to an act of racketeering.

1   efficiency's sake and based on counsel's request to file an amended complaint, the

2   Court will not repeat these pleading requirements in full in this order.  Instead, the

3   Court incorporates the attached order in this order.  Plaintiff is advised to review the

4   Serrano order for a fuller statement of the Court's reasoning for dismissing these

5   claims and for the standards necessary to plead a viable RICO claim.

6                                          **IV.**

7                                     **CONCLUSION**

8        For the reasons stated above, defendants' motion to dismiss is **GRANTED** and

9   plaintiff's tenth cause of action is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may

10  file an amended complaint within twenty days of the date this order is filed.

11

12       IT IS SO ORDERED.

13

14  DATED: July 11, 2001

15

16                                    _____
17                                      Judge Gary Allen Feess
                                         United States District Court
18

19

20

21

22

23

24

25

26

27

28

- 10 -

# Exhibit A



FILED
CLERK, U S DISTRICT COURT

JUN 2 9 2001

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE SERRANO,<br><br>               Plaintiff,<br><br>               v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>               Defendants. | NO. CV 00-13356 GAF (AJWx)<br><br>**ORDER DISMISSING RICO CLAIMS** |

I.

**INTRODUCTION**

Plaintiff Gene Serrano alleges that several Los Angeles Police Department ("LAPD") officers falsely arrested him and framed him for a crime he did not commit. His complaint includes claims against the City of Los Angeles, the officers and other defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

Serrano's complaint fails to adequately allege a claim for relief under RICO because it does not allege an injury to "business or property" within the meaning of the RICO statute. However, because the Court grants Serrano leave to amend, the RICO claims are **DISMISSED WITHOUT PREJUDICE.**

//

## II.

## FACTUAL BACKGROUND

For purposes of ruling on a motion to dismiss, the Court must accept all of plaintiff's factual allegations as true. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986).

On or about May 16, 1997, several LAPD officers searched Serrano's home and arrested him all without probable cause. (Complaint at ¶7). To support the arrest, the officers falsified their police reports to indicate they found marijuana on Serrano at the time of his arrest. (Id. at ¶¶7-8). Serrano pled guilty pursuant to a plea agreement with the District Attorney and was sentenced to an undisclosed amount of time in prison. (Id. at ¶8). His conviction was overturned by the state court in June 2000. (Id. at 7).

## III.

## DISCUSSION

**A.    Legal Standard for Evaluating Motions to Dismiss Under Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Generally, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). Dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In evaluating a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994); NL Indus., 792 F.2d at 898. The court is not, however, required to accept "legal conclusions cast in the form of factual

- 2 -

1  allegations if those conclusions cannot reasonably be drawn from the facts alleged."

2  Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

3       RICO claims based on predicate acts involving fraud must be pled with

4  particularity under Rule 9(b). Planned Parenthood of Columbia/Williamette, Inc. v.

5  American Coalition of Life Activists, 945 F. Supp. 1355, 1379 (D. Or. 1996) (collecting

6  cases so holding). Where the alleged predicate acts do not involve fraud, the more

7  lenient pleading standard in Rule 8(a) applies. Id.; Miranda v. Ponce Fed. Bank, 948

8  F.2d 41, 44 (1st Cir. 1991). Even under this more lenient standard, a RICO claim will

9  be dismissed if the plaintiff fails to set forth factual allegations supporting each element

10  of the alleged violation. Miranda, 948 F.2d at 44 ("[T]o avert dismissal under Rule

11  12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to

12  portray (i) specific instances of racketeering activity within the reach of the RICO

13  statute and (ii) a causal nexus between that activity and the harm alleged.") (emphasis

14  added); Jennings v. Emry, 910 F.2d 1434, 1435 (7th Cir. 1990) (same); cf. Balistreri,

15  901 F.2d at 699 (dismissal is appropriate where insufficient facts are pled to support a

16  cognizable legal theory).

17       Where a motion to dismiss is granted, a district court should grant leave to

18  amend unless it is clear that the complaint cannot be saved by any amendment.

19  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996); Doe v. United States, 58 F.3d 494,

20  497 (9th Cir. 1995).

21  **B.**    **Elements of a Civil RICO Claim**

22       RICO grants a private right of action to "[a]ny person injured in his business or

23  property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c).

24  Section 1962, in turn, contains four subsections which make it unlawful to: (a) invest

25  income derived from a pattern of racketeering activity in an enterprise; (b) acquire or

26  maintain an interest in an enterprise through a pattern of racketeering activity; (c)

27  conduct the affairs of an enterprise through a pattern of racketeering activity; or (d)

28  conspire to commit any of the above acts. 18 U.S.C. § 1962(a)-(d). Thus, to state a

claim for a civil RICO violation, a private plaintiff must allege facts showing (1) an injury to business or property and (2) a substantive violation of one or more subsections of section 1962.

### 1.   Injury to Business or Property

RICO does not afford a civil remedy for all injuries caused by unlawful racketeering activity; only injuries to "business or property" are actionable.  18 U.S.C. § 1964(c).  This limitation excludes recovery for personal injuries.  Oscar v. University Students Co-op Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 506 U.S. 1020, 113 S. Ct. 655 (1992) ("[P]ersonal injuries are not compensable under RICO.")[1]; Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990).[2]  In addition, in the

---

[1]Although three judges dissented from the judgment in Oscar, they too agreed that personal injuries are not compensable under RICO.  See Oscar, 965 F.2d at 789 (Kleinfeld, J., dissenting).
[2]The Ninth Circuit's position is in accord with every other Circuit Court which has confronted this issue, except, perhaps, the Fifth Circuit.  Compare Khurana v. Innovative Health Care Sys., Inc., 130 F.3d 143 (5th Cir. 1997) (allowing claims based on injury to reputation), vacated by Teel v. Khurana, 525 U.S. 979, 119 S. Ct. 442 (1998); with Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 954 (8th Cir. 1999) (Plaintiffs who alleged only injury to reputation lacked standing to sue under RICO because damage to reputation is generally considered personal injury, not an injury to "business or property"); Bast v. Cohen, Dunn & Sinclair, PC, 59 F.3d 492, 495 (4th Cir. 1995) ("An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'"); Libertad v. Welch, 53 F.3d 428, 437 (1st Cir. 1995) (Women who sought services at blockaded abortion clinics lacked standing to assert RICO claims against anti-abortion groups that blockaded those clinics because neither woman suffered any injury to business or property); Doe v. Roe, 958 F.2d 763, 767 (7th Cir. 1992) ("The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) (RICO plaintiffs may not recover damages for physical and emotional injuries due to harmful exposure to toxic waste); Grogan v. Platt, 835 F.2d 844, 846 (11th Cir.), cert. denied, 488 U.S. 981, 109 S. Ct. 531 (1988) (Stating "the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom" and holding that RICO does not permit recovery for economic aspects of personal injuries inflicted by predicate act of murder); Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir. 1986) (Rejecting argument that injuries to business or property include all pecuniary injuries caused by a substantive RICO violation and upholding dismissal of RICO claim by plaintiffs exposed to toxic chemicals).
The Ninth Circuit's position also finds support in language from two Supreme Court cases. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326 (1979) (Construing similar restriction in Clayton Act and stating "[t]he phrase 'business or property' ... retains restrictive significance. It would, for example, exclude personal injuries...."); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S. Ct. 3292, 3297 (1985) (Marshall, J., dissenting) (RICO "permits recovery only for injury to business or property. It, therefore, excludes recovery for personal injuries.").

1  Ninth Circuit, "injuries to property are not actionable under RICO unless they result in
2  tangible financial loss to the plaintiff." Oscar, 965 F.2d at 785 (plaintiffs failed to allege
3  any pecuniary injury to their interest in rental property caused by alleged acts of
4  racketeering); Berg, 915 F.2d at 464 (plaintiffs who had incurred no actual expenses
5  as a result of cancellation of insurance policies lacked standing to sue under RICO);
6  Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1311 (9th Cir. 1992), cert.
7  denied, 507 U.S. 1004, 113 S. Ct. 1644 (1993) (affirming dismissal of RICO claim
8  where it was impossible to determine from the complaint whether plaintiffs were
9  alleging lost opportunity to realize profits or loss of specific identifiable profits).

10     The Supreme Court has described RICO's injury requirement as an issue of
11  standing. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275
12  (1985). Whether a plaintiff has alleged an injury to business or property giving rise to
13  standing under RICO is a question of law for the court to determine and may properly
14  be raised on a motion to dismiss. See Oscar, 965 F.2d at 785 (upholding dismissal of
15  complaint for failure to allege an injury to property); Doe v. Roe, 958 F.2d 763, 767-68
16  (7th Cir. 1992).

17     Plaintiff claims he has pled a cognizable injury to his business or property by
18  alleging he suffered "lost employment, employment opportunities, and the wages and
19  other compensation associated with said employment and opportunities" inasmuch as
20  he "was unable to pursue gainful employment while defending ... [himself] against [the]
21  unjust charges and/or while unjustly incarcerated." (Complaint at ¶36). Plaintiff further
22  avers that he has suffered "material damage to ... [his] employment prospects by virtue
23  of the unjust and unconstitutional convictions ... [he has] sustained." (Id. at ¶37).
24  Citing to Guerrero v. Gates, 110 F. Supp. 2d 1287 (C.D. Cal. 2000) and the cases
25  cited therein, plaintiff argues that even if he suffered only a personal injury at the
26  hands of the defendants, pecuniary losses stemming from personal injuries are
27  compensable under RICO. Guerrero recognized that "[a] number of courts ... have
28  accepted or shown a disposition in favor of allowing RICO claims for the pecuniary

-5-

1   losses associated with personal injuries caused by racketeering" and on that basis

2   allowed a similar RICO claim to proceed. Id. at 1292.

3          This line of reasoning, however, was implicitly rejected by the Ninth Circuit in

4   Oscar.  The plaintiff in Oscar lacked standing to sue not only because she failed to

5   allege any "out-of-pocket expenditures," but also because "[t]he injury [she] alleged ...

6   is like that claimed by the plaintiff in a personal injury action."  Oscar, 965 F.2d at 787

7   (emphasis in original).  According to the court, "economic losses which derive[ ] from a

8   fundamentally personal injury" are not compensable under RICO. Id. at 788.

9          Two cases cited with approval by the Ninth Circuit in Oscar confirm this

10  approach.  In Grogan v. Platt, 835 F.2d 844, 846-47 (11th Cir.), cert. denied, 488 U.S.

11  981, 109 S. Ct. 531 (1988), the Eleventh Circuit held that six FBI agents who were

12  injured in a gun battle with suspects and the estates of two other agents who were

13  killed during the shootout, did not have standing under RICO to sue the estates of the

14  men who shot them.  The plaintiffs in Grogan maintained that the quantifiable

15  economic consequences of their personal injuries, including lost wages and

16  employment, constituted injuries to business and property within the meaning of RICO,

17  even if they could not recover under RICO for some of the traditional categories of

18  personal injury damages, such as mental anguish.  The Eleventh Circuit rejected this

19  argument concluding that "the ordinary meaning of the phrase 'injured in his business

20  or property' excludes personal injuries, including pecuniary losses therefrom." Id. at

21  847 (emphasis added).

22          Grogan is cited with approval by both the majority and dissent in Oscar.  See

23  Oscar, 965 F.2d at 786, 788; id. at 791 (Kleinfeld, J., dissenting) ("In Grogan ... the

24  victim ... was murdered; murder is personal injury, not injury to property, and pecuniary

25  losses flowing from the wrongful death could not transform personal injury into injury to

26  property.").  Similarly, in Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992), the Seventh

27  Circuit rejected the idea that any financial loss, no matter what its source, constitutes a

28  business or property injury within the meaning of RICO.  "Most personal injuries ...

- 6 -

1    entail some pecuniary consequences[,]" but where such losses are incurred as a result

2    of purely personal injuries, they do not constitute injuries to business or property within

3    the meaning of RICO. Roe, 958 F.2d at 770.

4       Oscar adopts the reasoning and results of Grogan and Roe, both of which

5    directly confronted, and rejected, the argument raised here by plaintiff. All of the

6    injuries alleged by plaintiff flow directly from his false arrest and imprisonment. False

7    arrest and false imprisonment constitute injury to the person, not to business or

8    property. See Owens v. Okure, 488 U.S. 235, 251, 109 S. Ct. 573 (1989) (claims

9    under 42 U.S.C. § 1983, including those based on false arrest, are subject to a state's

10    general or residual statute of limitations for personal injuries); Wilson v. Garcia, 471

11    U.S. 261, 277, 105 S. Ct. 1938 (1985) ("Congress unquestionably would have

12    considered the remedies established in the Civil Rights Act to be more analogous to

13    tort claims for personal injury than, for example, to claims for damages to property or

14    breach of contract."); Cal. Civ. Pro. § 340 (setting forth the statute of limitations for

15    "[a]n action for libel, slander, assault, battery, false imprisonment ... or for injury to or

16    for the death of one caused by the wrongful act or neglect of another...."); Black's Law

17    Dictionary 790 (7th ed. 1999) (defining "personal injury" as, inter alia, "[a]ny invasion of

18    a personal right, including mental suffering and false imprisonment."). That plaintiff

19    suffered some secondary financial losses flowing from his personal injuries does not

20    transform his losses into injuries to business or property.

21       Admittedly, placing recovery for pecuniary losses associated with personal

22    injuries outside the scope of civil RICO claims creates the possibility that victims of

23    predicate acts of racketeering, such as murder and kidnapping, will be unable to use

24    RICO as a vehicle for redress. But in such cases, plaintiffs will rarely be without a

25    remedy, which undoubtedly played a part in Congress's decision to exclude personal

26    injury litigation from the RICO statute. As noted by the Eleventh Circuit,

27          had Congress intended to create a federal treble damages

28          remedy for cases involving bodily injury, injury to reputation,

-7-

1    mental or emotional anguish, or the like, all of which cause

2    some financial loss, it could have enacted a statute

3    referring to injury generally, without any restrictive

4    language.

5    Grogan, 835 F.2d at 847 quoting Morrison v. Syntex Laboratories, 101 F.R.D. 743, 744

6    (D.D.C. 1984) (emphasis in Grogan).

7         Finally, even if the Court were to focus solely on the nature of the damages

8    plaintiff sustained, rather than on the nature of the injury inflicted, plaintiff's losses still

9    would not qualify as compensable injuries.  "'[P]roperty' comprehends anything of

10   material value owned or possessed."  Reiter, 442 U.S. at 338, 99 S. Ct. 2326; cf. Cal.

11   Civ. Code § 654 ("In this Code, the thing of which there may be ownership is called

12   property.").  Under California law, the loss of employment generally is not considered

13   an injury to property.[3]  Barton v. New United Motor Mfg. Inc., 43 Cal. App. 4th 1200,

14   1207 (1996) (claim for termination in violation of public policy is in the nature of claim

15   for personal injuries, not claim for violations of property right).[4]  Nor can plaintiff's

16   claimed "employment opportunity" losses be characterized as the kind of tangible

17   financial loss to a business recoverable under RICO.  Grogan, 835 F.2d at 848; Oscar,

18   965 F.2d at 785.

19       **2.    Substantive Violation**

20       In addition to demonstrating standing, to state a claim for damages under

21   section 1964(c), a private plaintiff must adequately allege a substantive violation of one

22

23   [3]Courts evaluating RICO damage claims have generally looked to state law to determine
     whether a particular claim constitutes an injury to property.  See, e.g., DeMauro v. DeMauro, 115
24   F.3d 94, 96 (1st Cir. 1997); Doe, 958 F.2d at 768; Leach v. F.D.I.C., 860 F.2d 1266, 1274 n.14 (5th
     Cir. 1988); cf. Oscar, 965 F.2d at 786 (describing the plaintiff's property interest as a "leasehold,"
25   a definition supplied by California law).
         [4]Examples of compensable injuries include the theft or destruction of personal property.
26   See Northeast Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342, 1349 (3d Cir.), cert. denied, 493
     U.S. 901, 110 S. Ct. 261 (1989) (destruction of plaintiff's medical equipment constituted injury to
27   property); Gitterman v. Vitoulis, 564 F. Supp. 46, 48-49 (S.D.N.Y. 1982) (allegation that defendants
     stole jewelry from plaintiff's home sufficient to state claim under RICO).  Thus, if plaintiff chooses
28   to file an amended complaint he may meet RICO's standing requirement by alleging the theft or
     destruction of property connected to an act of racketeering.

1   of section 1962's four subsections.[5]  In this case, plaintiff's complaint includes claims

2   under subsections b, c and d.  (Complaint at ¶¶31, 32, 40).[6]

3                    (a)      **Section 1962(b)**

4        Section 1962(b) makes it unlawful to acquire an interest in or control of an

5   enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(b)[7]; Schreiber

6   Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1398-99 (9th Cir.

7   1986).

8        Allegations that a plaintiff was injured by a predicate act of racketeering are

9   insufficient to state a claim for damages based on a violation of section 1962(b).

10  Rather, a plaintiff must allege he or she was injured by the defendant's acquisition of

11  an interest in an enterprise.  See Advocacy Org. for Patients and Providers v. Auto.

12  Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999) ("[A] complaint for violation of §

13  1962(b) must allege an 'acquisition or maintenance' injury separate and apart from the

14  injury suffered as a result of the predicate acts of racketeering activity."); Compagnie

15  De Reassurance D'ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92

16  (1st Cir.), cert. denied, 516 U.S. 1009, 116 S. Ct. 564 (1995) (same); Lightning Lube,

17  Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993) (same); Danielsen v.

18  Burnside-Ott Aviation Training Ctr., 941 F.2d 1220, 1231 (D.C.Cir. 1991) (same); cf.

19

20       [5]Although the failure to plead a compensable injury is itself sufficient grounds for dismissal,
21  see Oscar, 965 F.2d at 785 n. 1; Imagineering, 976 F.2d at 1311, the Court addresses whether
    plaintiff has adequately pled the other elements of a civil RICO claim based on plaintiff's request
22  for leave to amend his complaint.
         [6]The following discussion focuses on plaintiff's attempt to allege a RICO claim against the
23  individual defendants.  Plaintiff's RICO claim against the City is dismissed because "government
    entities are incapable of forming the malicious intent necessary to support a RICO action." Pedrina
24  v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996), cert. denied, Wong v. Chun, 520 U.S. 1268, 117 S.
    Ct. 2441 (1997).
25       [7]18 U.S.C. § 1962(b) provides:
              It shall be unlawful for any person through a pattern of racketeering
26            activity or through collection of an unlawful debt to acquire or
              maintain, directly or indirectly, any interest in or control of any
27            enterprise which is engaged in, or the activities of which affect,
              interstate or foreign commerce.
28

1    Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir.

2    1992), cert. denied, 508 U.S. 908, 113 S. Ct. 2336 (1993) (requiring plaintiff to plead

3    injury due to defendant's investment of income generated by racketeering activity for

4    civil claim based on a violation of section 1962(a)).

5            This requirement is imposed by section 1964(c) which confers a civil damages

6    remedy only on those individuals who have been injured in their business or property

7    "by reason of a violation of section 1962...." 18 U.S.C. § 1964(c) (emphasis added).

8    To allow a plaintiff to recover under section 1962(b) based solely on injuries sustained

9    as a result of racketeering activity, instead of requiring an injury caused by the

10   acquisition or maintenance of an interest in an enterprise, would permit recovery

11   without a showing of a substantive violation.  Cf. Bennett v. Berg, 685 F.2d 1053, 1060

12   (8th Cir. 1982), cert. denied, Prudential Ins. Co. of America, v. Bennett, 464 U.S. 1008,

13   104 S. Ct. 527 (1983) (RICO "forbids the predicate acts of racketeering only insofar as

14   an 'enterprise' is involved.... RICO is not a recidivist statute with enhanced penalties for

15   acts of racketeering that are elsewhere proscribed in the criminal code.").

16           In addition, a violation of section 1962(b) requires that the defendant acquire or

17   maintain an interest in an enterprise "through" a pattern of racketeering activity.   18

18   U.S.C. § 1962(b); Advocacy Org., 176 F.3d at 328 (finding claim alleging a violation of

19   section 1962(b) deficient because complaint was "entirely silent with regard to how

20   Defendants acquired or maintained an interest in or control of the enterprise....")

21   (emphasis in original).  There must be a causal nexus between the acts of racketeering

22   alleged and the defendants' control over the enterprise.

23           Plaintiff's complaint fails to adequately allege either of these required elements.

24   None of the allegations in this case suggest plaintiff sustained any injuries as the result

25   of the defendants' acquisition of an interest in an enterprise.  Nor does the complaint

26   allege that the defendants gained control over an enterprise through racketeering

27   activity.  Indeed, none of the acts of racketeering alleged in the complaint were even

28   directed at an enterprise.  At most, plaintiff's complaint alleges he was injured by a

1   single act of racketeering, unrelated to any effort to acquire control over an enterprise.

2   Accordingly, plaintiff has not pled a viable claim for a RICO violation based on section

3   1962(b).

4                    **(b)     Section 1962(c)**

5          Section 1962(c) makes it unlawful for any person to participate in the affairs of

6   an enterprise that affects interstate commerce through a pattern of racketeering

7   activity.  18 U.S.C. § 1962(c)[8]; Sedima, 473 U.S. at 496, 105 S. Ct. 3275.  The terms

8   "enterprise," "racketeering activity," and "pattern of racketeering activity" are defined in

9   18 U.S.C. § 1961.  A RICO enterprise "includes any individual, partnership,

10  corporation, association, or other legal entity, and any union or group of individuals

11  associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "Racketeering

12  activity" includes a variety of state and federal offenses ("predicate acts") including,

13  inter alia, murder, kidnapping, gambling, arson, robbery, bribery, dealing in narcotics

14  and extortion.  See 18 U.S.C. § 1961(1).  A "pattern of racketeering activity" requires

15  "at least two acts of racketeering activity, one of which occurred after the effective date

16  of this chapter and the last of which occurred within ten years ... after the commission

17  of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  In short, to allege a

18  violation of section 1962(c), a plaintiff must allege that a defendant, through the

19  commission of two or more acts constituting a pattern of racketeering activity, directly

20  or indirectly participated in an enterprise, the activities of which affected interstate or

21  foreign commerce.[9]

22

23        [8]18 U.S.C. § 1962(c) provides:
          It shall be unlawful for any person employed by or associated with
24        any enterprise engaged in, or the activities of which affect, interstate
          or foreign commerce, to conduct or participate, directly or indirectly,
25        in the conduct of such enterprise's affairs through a pattern of
          racketeering activity or collection of unlawful debt.

26        [9]The requirements of section 1962(c) must be established as to each individual defendant.
     See United States v. Persico, 832 F.2d 705, 714 (2d Cir.1987), cert. denied, 486 U.S. 1022, 108
27   S. Ct. 1995 (1988) ("The focus of section 1962(c) is on the individual patterns of racketeering
     engaged in by a defendant, rather than the collective activities of the members of the enterprise,
28   which are proscribed by section 1962(d)."); Benet-Soto v. Chase Manhattan Bank, N.A., 791 F.
     Supp. 914, 919 (D.P.R. 1992) ("The most basic requirement for sustaining a RICO action is

1                            **(i)    Racketeering Activity**

2         Section 1961(1) enumerates a list of state and federal crimes that constitute

3 racketeering activity and serve as predicate acts under the statute. RICO lists all of

4 the federal offenses which may constitute predicate acts of racketeering and makes

5 "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery,

6 extortion, dealing in obscene matter, or dealing in a controlled substance or listed

7 chemical ... which is chargeable under State law and punishable by imprisonment for

8 more than one year" a predicate act of racketeering. 18 U.S.C. § 1961(1).

9         Section 1961(1)'s enumerated crimes are exclusive; conduct that does not

10 constitute a listed offense cannot constitute racketeering activity. United States v.

11 Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1129

12 (E.D.N.Y. 1992). Thus, actions which violate an individual's civil or constitutional

13 rights, but do not qualify as any of the criminal offenses listed in section 1961(1), do

14 not constitute racketeering activity. Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir.

15 1997).

16         To state a claim for damages under section 1964(c) based on a violation of

17 section 1962(c), a plaintiff must properly allege at least one act of racketeering which

18 caused his injury. See Reddy v. Litton Indus., Inc., 912 F.2d 291, 294 (9th Cir. 1990),

19 cert. denied, 502 U.S. 921, 112 S. Ct. 332 (1991). No matter how many acts of

20 racketeering are alleged, the complaint will fail if it does not allege an injury

21 proximately caused by an act of racketeering. See Holmes v. Securities Investor Prot.

22 Corp., 503 U.S. 258, 268, 112 S. Ct. 1311 (1992).

23         Finally, racketeering activity is not adequately alleged simply by repeating the

24 laundry list of predicate acts contained in the statute without including any facts which

25 would suggest such crimes have been committed. Even under the liberal pleading

26 standards of Rule 8, such conclusory allegations are insufficient. See Jennings, 910

27

28    ―――――――――――――――――――

   establishing defendants' involvement in the racketeering acts.").

F.2d at 1436 n. 1 (RICO plaintiffs may not substitute conclusory statements for minimally sufficient factual allegations); Advocacy Org., 176 F.3d at 329 (A plaintiff may not state a RICO claim by "simply parrot[ing] the language of the RICO statute...."); Benet-Soto v. Chase Manhattan Bank, N.A., 791 F. Supp. 914, 920 (D.P.R. 1992) ("A RICO claim that merely recites the statutory language under the guise of being a factual allegation ... does not satisfy pleading requirements.").

Plaintiff's complaint charges that defendants engaged in a variety of illegal activities including "attempted murder, extortion, [and] dealing in controlled substances, all chargeable under California law as felonies...." (Complaint at ¶33). Plaintiff further alleges that the police officers "repeatedly committed assaultive and extortionate conduct ... made false arrests ... used grossly excessive force, [and] planted evidence...." (Id.). Finally, plaintiff claims the "pattern and practice of racketeering activities also included numerous acts of tampering with witnesses, victims, and informants...." (Id. at ¶34).

Read in connection with the factual allegations surrounding his arrest and incarceration, plaintiff's complaint adequately alleges an injury caused by an act of racketeering– although not a racketeering act identified by plaintiff. Planting evidence, witness tampering and testifying falsely at a state criminal proceeding do not qualify as predicate acts under RICO. Only the obstruction of proceedings and investigations with a federal nexus qualify as predicate acts. See 18 U.S.C. § 1961(1)(B) (making violations of 18 U.S.C. §§ 1503, 1510, 1512 and 1513 predicate acts). Nor are there any facts alleged to support plaintiff's allegations of attempted murder and extortion.[10]

Nonetheless, it appears plaintiff's false arrest could be chargeable as

---

[10]Plaintiff's reference to dealing in controlled substances is equally unavailing. Section 1961(1) makes violations of state and federal drug laws predicate acts under RICO. However, a violation of 21 U.S.C. § 841(a)(1), for distributing a controlled substance, requires proof of the "actual, constructive, or attempted transfer of a controlled substance...." United States v. Wright, 593 F.2d 105, 107 (9th Cir. 1979). Under the facts alleged, no transfer or attempt to transfer narcotics took place because the officers maintained possession and control of the drugs for the purpose of framing the plaintiff.

1   kidnapping under California law.  Under California Penal Code section 207, "[e]very

2   person who forcibly, or by any other means of instilling fear, steals or takes, or holds,

3   detains, or arrests any person in this state, and carries the person into another part of

4   the [state] ..., is guilty of kidnapping."  By reference to Penal Code section 834, the

5   statute exempts police officers "taking a person into custody, in a case and in the

6   manner authorized by law."  (Emphasis added).  Because plaintiff alleges that the

7   officers framed him, the allegations describe an unlawful arrest.

8        Noting that the legislature has criminalized false arrest through other, more

9   specific, penal statutes, see Cal. Penal Code §§ 146, 236, defendants argue that the

10  kidnapping statute was not meant to apply to this kind of conduct.  But the Court

11  cannot conclude from the fact that the legislature has enacted overlapping statutes

12  that it intended to exempt from prosecution conduct which satisfies all of the elements

13  of section 207.  "Statutes may overlap or enjoy a partial redundancy and yet be fully

14  capable of coexisting." United States v. Kim, 193 F.3d 567, 573 (2d Cir. 1999)

15  (internal quotations omitted) citing United States v. Batchelder, 442 U.S. 114, 118,

16  122, 99 S. Ct. 2198 (1979).

17        Thus, plaintiff has pled sufficient facts to allege he was injured by a predicate

18  act of racketeering activity.  Plaintiff has not, however, pled any facts showing

19  defendants engaged in "at least two acts of racketeering activity...." as required by the

20  statute.  18 U.S.C. § 1961(5).  If plaintiff chooses to amend his complaint, he must

21  include some facts showing that each defendant committed at least two acts of

22  racketeering.

23                    (ii)    Pattern

24        Allegations that the defendants committed two or more predicate acts of

25  racketeering, standing alone, are insufficient to state a claim for a violation of RICO.

26  Instead, plaintiff must allege some facts suggesting the predicate acts constitute a

27  "pattern" of criminal activity.  18 U.S.C. § 1962.

28        "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show

- 14 -

1    that the racketeering predicates are related, and that they amount to or pose a threat

2    of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S.

3    229, 239, 109 S. Ct. 2893 (1989). "Related" conduct "embraces criminal acts that

4    have the same or similar purposes, results, participants, victims, or methods of

5    commission, or otherwise are interrelated by distinguishing characteristics and are not

6    isolated events." Id. at 240, 109 S. Ct. 2893 (internal quotation marks omitted).

7         "'Continuity' is both a closed- and open-ended concept, referring either to a

8    closed period of repeated conduct or to past conduct that by its nature projects into the

9    future with a threat of repetition." Id. at 241, 109 S. Ct. 2893. "Closed-ended"

10   continuity is established by showing that related predicate acts occurred over a

11   "substantial period of time." Id. at 242, 109 S. Ct. at 2893. "Predicate acts extending

12   over a few weeks or months and threatening no future criminal conduct do not satisfy

13   this requirement." Id.

14        Where long-term criminal conduct cannot be established, "open-ended"

15   continuity may be shown. Id. Open-ended continuity is the threat that criminal

16   conduct will continue into the future. It is established by showing either that the

17   predicate acts "include a specific threat of repetition extending indefinitely into the

18   future" or that the predicate acts were "part of an ongoing entity's regular way of doing

19   business." Id.

20        Of course at this stage of the proceedings, plaintiff need not prove a "pattern" of

21   racketeering activity. Nonetheless, while a complaint need not include all of the facts

22   necessary to prove a pattern, it must do more than simply allege, in conclusory

23   fashion, that the predicate acts constitute a pattern. Benet-Soto, 791 F. Supp. at 921

24   ("[C]onclusory statements and [the] repeated use of the statutory phrase" do not

25   adequately plead the pattern requirement). The facts pled must, at a minimum, show

26   some ability on the part of the plaintiff to prove that the predicate acts of racketeering

27   constitute a pattern of criminal activity-- an element required by the statute. If a review

28   of the complaint shows no facts from which the Court can infer a pattern of

1 | racketeering, then the complaint must be dismissed.  See id.

2 | Here, plaintiff only pleads facts surrounding one encounter with some of the

3 | individual defendants.  He then adds "Defendants ... being associated with said

4 | enterprises, conducted and/or participated in said enterprises' affairs through a pattern

5 | of racketeering activities" consisting of "all of the activities set forth in full, factual detail

6 | hereinabove.... "  (Id. at ¶¶32, 33).  While the more than one hundred complaints on

7 | file with this Court alleging abuse at the hands of Rampart Division police officers,

8 | similar to that endured by plaintiff, convinces the Court that plaintiff may be able to

9 | plead facts which would support the pattern element necessary to a RICO claim, he

10 | has not done so here.  If he chooses to amend his complaint, plaintiff must allege

11 | some facts tending to show that the defendants he has sued engaged in multiple and

12 | related predicate acts over a substantial period of time from which the Court can infer a

13 | pattern of racketeering activity may ultimately be shown.

14 | (iii)    Participating in the Conduct of an Enterprise

15 | Section 1962(c) prohibits a person associated with an enterprise from

16 | conducting the affairs of that enterprise through a pattern of racketeering activity.  18

17 | U.S.C. § 1962(c).  Enterprises include "any individual, partnership, corporation,

18 | association, or other legal entity, and any union or group of individuals associated in

19 | fact although not a legal entity." 18 U.S.C. § 1961(4). This broad definition includes

20 | both legitimate and illegitimate, formal and informal organizations.  United States v.

21 | Turkette, 452 U.S. 576, 587, 101 S. Ct. 2524  (1981).  Failure to adequately plead an

22 | enterprise is grounds for dismissal.  Chang, 80 F.3d at 1300.

23 | To establish the existence of a RICO enterprise a plaintiff must adduce

24 | "evidence of an ongoing organization, formal or informal, and ... evidence that the

25 | various associates function as a continuing unit."  Turkette, 452 U.S. at 583, 101 S. Ct.

26 | 2524.  The evidence must reveal "an ascertainable structure separate and apart from

27 | the pattern of racketeering activity...." Id. at 1297.

28 | When a plaintiff identifies a legitimate business or organization as the relevant

1   enterprise, the need to allege and prove an existence separate from the racketeering

2   activity can be met without great difficulty. However, when the plaintiff alleges the

3   enterprise was an association-in-fact, showing that the enterprise had an existence

4   separate from the acts of racketeering is more complicated. Addressing what a

5   plaintiff must show to prove that an association-in-fact constitutes an enterprise under

6   RICO, the Ninth Circuit in Chang explained:

7              The predicate acts of racketeering activity, by themselves,

8              do not satisfy the RICO enterprise element....¶ At a

9              minimum to be an enterprise an entity must have some sort

10             of structure ... for the making of decisions, whether it be

11             hierarchical or consensual. The structure should provide

12             some mechanism for controlling and directing the affairs of

13             the group on an on-going, rather than an ad hoc basis.

14  Chang, 80 F.3d at 1299 (internal quotations and citations omitted). For this reason,

15  proof of a conspiracy, without more, does not satisfy this requirement. Id.

16          Public entities, including municipal police departments, can be RICO

17  enterprises. See, e.g., United States v. Boylan, 898 F.2d 230, 236 (1st Cir.), cert.

18  denied, 498 U.S. 849, 111 S. Ct. 139 (1990); United States v. Ruiz, 905 F.2d 499, 503

19  (1st Cir. 1990); United States v. Lopez, 907 F.2d 1096, 1099 (11th Cir. 1990); United

20  States v. Ambrose, 740 F.2d 505, 512 (7th Cir. 1984), cert. denied, 472 U.S. 1017,

21  105 S. Ct. 3479 (1985). At least one court has found a group of rogue police officers

22  to constitute a RICO enterprise. United States v. Torres Lopez, 851 F.2d 520, 528 (1st

23  Cir. 1988).

24          In this case, plaintiff alleges that "[t]he LAPD, its CRASH unit, and its Rampart

25  Division" are all enterprises within the meaning of RICO. (Complaint at ¶27). These

26  are legitimate organizations with ascertainable structures that exist separate and apart

27  from the racketeering activity alleged in the complaint. Thus, plaintiff has identified

28  several potential enterprises. He must, however, also allege that the defendants

1   participated in the conduct of the affairs of the enterprise.  The Supreme Court has

2   held that in order to satisfy the conduct requirement of section 1962(c), a plaintiff must

3   allege that the defendant "participated in the operation or management of the

4   enterprise itself" and played "some part in directing the enterprises affairs." Reves v.

5   Ernst & Young, 507 U.S. 170, 183, 179, 113 S. Ct. 1163 (1993).

6        In Reves, the Supreme Court held that an accounting firm that acted as outside

7   auditor to a farmers' cooperative and improperly valued certain co-op assets on its

8   financial statements could not be held liable under section 1962(c) because it had not

9   directed the affairs of the enterprise.  Id. at 186, 113 S. Ct. 1163. To reach this

10  conclusion, the Court analyzed the meaning of the words "conduct" and "participate,"

11  finding that in this context, "conduct... indicates some degree of direction" and

12  "participate" means "to take part in[,]"

13              Once we understand the word 'conduct' to require some

14              degree of direction and the word participate to require some

15              part in that direction, the meaning of § 1962(c) comes into

16              focus.  In order to 'participate, directly or indirectly, in the

17              conduct of such enterprise's affairs' one must have some

18              part in directing those affairs.  Of course, the word

19              'participate' makes clear that RICO liability is not limited to

20              those with primary responsibility for the enterprise's affairs,

21              just as the phrase 'directly or indirectly' makes clear that

22              RICO liability is not limited to those with a formal position in

23              the enterprise... but some part in directing the enterprises

24              affairs is required.

25  Id. at 179, 113 S. Ct. 1163.

26        Since Reves, lower courts have struggled to define the amount of control an

27  individual must exert over an enterprise in order to be liable under section 1962(c).

28  Compare United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994), cert. denied, 513

1  U.S. 1177, 115 S. Ct. 1161 (1995) (distinguishing between outside professionals and

2  employees of the enterprise) with University of Maryland v. Peat, Marwick, Main & Co.,

3  996 F.2d 1534, 1538-39 (3d Cir. 1993) ("Under [Reves], not even action involving

4  some degree of decisionmaking constitutes participation in the affairs of an

5  enterprise.").  Whether patrol officers "participate ... in the conduct" of the LAPD or

6  their CRASH units as that as that phrase is used in RICO is an open question after

7  Reves and one the Court need not decide at this stage in the proceedings.  Plaintiff is

8  being given a chance to amend his complaint, and, if he chooses to do so, his

9  amended pleading must include some facts suggesting either that he can meet the

10  requirements of Reves.  Alternatively, if plaintiff identifies an association-in-fact as the

11  relevant enterprise he must allege some facts to show the requisite separate structure

12  required under Chang.

13              **(c)    Section 1962(d)**

14          Section 1962(d) makes it unlawful for any person "to conspire to violate any of

15  the provisions of subsection (a), (b), or (c)...." 18 U.S.C. § 1962(d).  To recover

16  damages for a violation of section 1962(d), a private plaintiff must demonstrate an

17  injury to business or property proximately caused by an act of racketeering.  Beck v.

18  Prupis, 529 U.S. 494, 507, 120 S. Ct. 1608 (2000).   In addition, a plaintiff must allege

19  the existence of an agreement to violate one or more of RICO's substantive provisions.

20  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d

21  Cir.1999).

22          A conspiracy to violate RICO consists of two agreements. "The first is an

23  agreement to conduct or participate in the affairs of an enterprise [or to acquire or

24  maintain any interest in or control of any enterprise] through a pattern of racketeering

25  activity.  The second is an agreement to the commission of at least two predicate acts."

26  Gagan v. American Cablevision, Inc., 77 F.3d 951, 961 (7th Cir. 1996) (internal

27  citations and quotations omitted); Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir.1993).

28          Plaintiff's failure to allege a compensable injury to business or property dooms

1   his conspiracy claim just as it does his substantive RICO claims.  For this reason, his

2   claim for conspiracy to violate RICO also must be dismissed.

3                                                   IV.

4                                            CONCLUSION

5           For the reasons stated above, defendants' motion to dismiss is **GRANTED** and

6   plaintiff's fourth and fifth causes of action are **DISMISSED WITHOUT PREJUDICE**.

7   Plaintiff may file an amended complaint within twenty days of the date this order is

8   filed.

9

10          IT IS SO ORDERED.

11

12  DATED: June 29, 2001

13

14                                        _____

15                                        Judge Gary Allen Feess
                                          United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28